**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

STEPHEN D. PERRY,         :
                               :     Civil Action No. 03-551 (JLL)
        Petitioner,   :
                               :
        v.              :     **OPINION**
                               :
WILLIAM T. McCARGO, et al.,  :
                               :
        Respondents.  :

**APPEARANCES:**

      STEPHEN D. PERRY, Petitioner pro se
      East Jersey State Prison
      #63336/SBI#431064A
      Lock Bag R
      Rahway, New Jersey 07065

      TAMARA L. RUDOW, ESQ.
      OFFICE OF NEW JERSEY ATTORNEY GENERAL
      Division of Law
      Richard J. Hughes Justice Complex
      25 Market Street, P.O. Box 112
      Trenton, New Jersey 08625-0112
      Attorneys for Respondents

**LINARES**, District Judge

     Petitioner Stephen D. Perry, a prisoner currently confined at East Jersey State Prison, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The main respondent is William T. McCargo, Acting Chairman of the New Jersey State Parole Board ("Parole Board").

     For the reasons stated herein, the Petition will be denied for failure to state a federal constitutional deprivation.

I.   BACKGROUND

In October 1979, petitioner Stephen D. Perry ("Perry") pled guilty to first degree murder.  He was sentenced on October 16, 1979 to a life term in prison to be served consecutively to a sentence later imposed on December 14, 1979, for attempted murder of another person and related charges.

On October 30, 1997, a two-member panel of the Parole Board denied Perry's request for release on parole after a parole hearing, and imposed a 60-year future parole eligibility date or Future Eligibility Term ("FET").  A narrative decision was prepared on November 12, 1997 and the matter was referred to a three-member panel of the Parole Board.  The three-member panel interviewed Perry by video conference on January 7, 1998.  The panel issued a Notice of Decision, on January 13, 1998, affirming the two-member panel decision, denying parole and imposing a 60-year FET.

Perry filed an administrative appeal from this decision.  On January 27, 1999, the full Parole Board affirmed.  Thereafter, on March 29, 1999, Perry filed an appeal to the Superior Court of New Jersey, Appellate Division.  On April 9, 2001, the State filed a motion for remand to allow the three-member panel to reconsider its decision to impose a 60-year FET.  Perry opposed the motion, but the Appellate Division granted same and the matter was remanded.

Upon reconsideration of its prior decision, on July 13, 2001, the three-member panel concluded that a presumptive FET would be inappropriate given Perry's unsatisfactory progress in reducing the likelihood of future criminal conduct.  This decision was based upon a comprehensive review of Perry's record.  The panel concluded that Perry remained a substantial threat to public safety and there was a substantial likelihood that he would commit a crime if released on parole.  The panel considered, among other things, that Perry had committed 51 infractions while incarcerated, seven of which were asterisk offenses.[1]  Consequently, the panel determined that an extended FET beyond the presumptive term was justified, but elected to modify the FET from 60 years to 15 years.

On July 31, 2001, the Appellate Division reinstated Perry's appeal, which had been dismissed for failure to prosecute.  On April 30, 2002, the Appellate Division affirmed the parole Board's decision denying parole and imposing a 15-year FET.  The New Jersey Supreme Court denied certification on July 15, 2002.  Perry filed this federal habeas action on or about February 5, 2003.  Respondents answered the petition, and provided the relevant record, on July 28, 2003.

---

[1]  "Asterisk" offenses are prohibited acts considered the most serious and result in the most severe sanctions.  See N.J.A.C. 10A:4-4.1(a).

3

## II.  STANDARD OF REVIEW OF § 2254 CLAIMS

The Court recognizes that a pro se pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, a pro se habeas petition should be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Duarte v. Hurley, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because Jefferson is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)(citing Parke v. Raley, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an

4

> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  Williams, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  Id. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  Id. at 411.  See also Werts v. Vaughn, 228 F.3d 178, 197 (3d Cir. 2000), cert. denied,

532 U.S. 980 (2001); <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97; <u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  <u>Id</u>.  AEDPA prohibits such *de novo* review. Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was objectively unreasonable.  <u>Id</u>.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court

precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

7

III.   ANALYSIS

Petitioner asserts the following grounds for relief: (1) N.J.A.C. 10A:71-3.21(d) is unconstitutionally vague and its application resulted in an arbitrary and capricious decision of a 60-year FET; (2) violation of due process when the Parole Board allowed the Commissioner of Corrections to provide a victim input statement without notifying petitioner; (3) the Parole Board's deviation from established administrative regulations, to justify a denial of parole with a 60-year FET, was arbitrary and capricious.

As a preliminary matter, it must be remembered that there is no federal constitutional right to parole; states, however, may create a parole entitlement protected by the Due Process Clause. See Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979).  See also Board of Pardons v. Allen, 482 U.S. 369 (1987); Prevard v. Fauver, 47 F.Supp.2d 539, 545 (D.N.J.), aff'd, 202 F.3d 254 (3d Cir. 1999).

Both federal and state courts have held that the New Jersey parole statute contains language creating an expectation of parole eligibility entitled to some measure of due process protections.  See Williams v. New Jersey State Parole Board, 1992 WL 32329, *2 (D.N.J. Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey State Parole Board v. Byrne, 93 N.J. 192, 203 (1983), aff'd, 975 F.2d 1553 (3d Cir. 1992).  Judge Lifland of

8

this Court has held that these cases remain good law even after taking into account the rule announced by the Supreme Court in Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted), that liberty interests created by state law "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." See Watson v. DiSabato, 933 F.Supp. 390, 392-93 (D.N.J. 1996).

The question remains what process is due.  The Supreme Court of New Jersey has stated that

> Only a few basic procedures are required to deal with the risks of erroneous or arbitrary determinations in this context.  We conclude that the process required is notice of the pendency of the parole disposition, a statement by the objecting judge or prosecutor of the reasons why the punitive aspects of the sentence have not been fulfilled, and the opportunity for the prisoner to respond in writing to that statement of reasons.  No hearing, confrontation, or counsel issues are implicated here.

Byrne, 93 N.J. at 211.  See also Watson, 933 F.Supp. 390 (prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response).

A.   Application of N.J.A.C. 10A:71-3.21(d)

Perry first asserts that N.J.A.C. 10A:71-3.21(d) is unconstitutionally vague because it does not contain an

independent schedule as required by the enabling statute, and its application to petitioner resulted in an arbitrary and capricious decision of a 60-year FET.  To the extent that Perry is challenging the 60-year FET, this claim is moot because the Parole Board modified the FET to 15 years.  However, Perry makes a broader argument against his extended FET, namely, he challenges the constitutionality of N.J.A.C. 10A:71-3.21(d). This Court finds that the regulation is not vague and that Perry's claim is clearly without merit.

The regulation states that a three-member panel may establish an FET different from the schedule set forth in N.J.A.C. 10A:71-3.21(a)(for those convicted of murder, manslaughter, and other crimes similar to that which petitioner was convicted) if the panel finds that the scheduled FET is "clearly inappropriate due to the inmate's lack of satisfactory progress in reducing the likelihood of future criminal behavior." N.J.A.C. 10A:71-3.21(d).  The regulation requires that such a determination must take into consideration those factors enumerated in N.J.A.C. 10A:71-3.11.  Id.  Section 10A:71-3.11(b) lists 23 separate factors.  Therefore, the regulation provides clear and specific guidelines for extending an FET beyond the presumptive term.  Accordingly, the Court finds that N.J.A.C. 10A:71-3.21(d) is not unconstitutionally vague simply because it does not have a schedule of specified terms for an extended FET.

Moreover, the Parole Board's application of the regulation in this case did not result in an arbitrary and capricious FET decision.  The Parole Board clearly specified that its review was based on its consideration of the enumerated factors in N.J.A.C. 10A:71-3.11 and 10A:71-3.21(d).  (<u>See</u> Parole Board Decision dated July 31, 2001, attached to Respondents' Affidavit of Tamara L. Rudow ("Rudow Aff.") at Exhibit K).  The Parole Board's decision is based on Perry's criminal history and institutional record. Thus, the Parole Board's decision was objectively reasonable and factually supported by the record.  There is nothing in the record that would suggest animus or arbitrariness by the Parole Board.

Finally, although Perry asserted the unconstitutional vagueness of the regulation as applied by the Parole Board in his brief on appeal, the Appellate Division did not deem this claim, or any of Perry's claims on appeal, sufficient to merit discussion.  The Appellate Division held that Perry's arguments are "totally without merit" and affirmed the Parole Board's denial of parole and extended FET substantially for the reasons set forth in the Parole Board's July 31, 2001 administrative decision.  (<u>See</u> Superior Court of New Jersey, Appellate Division, <u>per</u> <u>curiam</u> Opinion dated April 30, 2002, Rudow's Aff. At Ex. Q). This Court finds that the Parole Board's decision and the Appellate Division's decision were not based on an unreasonable

11

determination of the facts in light of the evidence presented. Further, the decision to extend the FET beyond the presumptive term was made consistent with the applicable state law, which included specific enumerated factors to guard against arbitrary decisions. Accordingly, Perry is unable to show a federal constitutional deprivation and he is not entitled to federal habeas relief on this particular claim.

B.   The Parole Board's 15-Year FET Decision Was Not Arbitrary

Perry also contends that the Parole Board deviated from established administrative regulations to justify a denial of parole with a 60-year FET. He asserts that the decision was arbitrary and capricious, and deprived him of his right to substantive due process. This Court again holds that Perry's claim as to the 60-year FET is moot because the Parole Board revised the FET to 15 years. However, to the extent that Perry is claiming that the 15-year FET is arbitrary, the Court rejects the claim, finding that the Parole Board's 15-year FET decision was objectively reasonable and in accordance with the established law and administrative regulations.[2]

---

[2] The Parole Act of 1948, in effect when Perry committed the crime for which he is currently incarcerated (in late 1978, early 1979), predicated parole eligibility on a finding "that there is a reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society." N.J.S.A. 30:4-123.14 (repealed 1979).

In a § 2254 proceeding, state-court determinations of factual issues shall be presumed to be correct and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). See also Meyers v. Gillis, 93 F.3d 1147, 1149 n.1 (3d Cir. 1996). In addition, district courts are not to "second-guess parole boards" on federal habeas review, and the requirements of substantive due process are satisfied if there is some basis for the challenged decision. Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002); Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001). Furthermore, "[t]he relevant level of arbitrariness required in order to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more

---

Under the Parole Act of 1979, parole eligibility is predicated on likely recidivism alone. "An adult inmate shall be released on parole ... unless information supplied in the report filed pursuant to [N.J.S.A. 30:4-23.54] or developed or produced at a hearing ... indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the law of this State if released on parole at such time." N.J.S.A. 30:4-123.53a (amended 1997).

The parole eligibility standard of the Parole Act of 1979 applies to those serving a sentence at the time the 1979 Act took effect, which would include petitioner. N.J.S.A. 30:4-123.46a; Trantino v. New Jersey State Parole Bd., 154 N.J. 19, 27 (1998). The standard was revised again in 1997; the 1997 amendment does not apply to inmates sentenced before its effective date. Trantino v. New Jersey State Parole Bd., 331 N.J. Super. 577, 605 (App. Div. 2000), aff'd in part, modified in part, 166 N.J. 113 (2001).

egregious, which we have termed at times "conscience shocking" or "deliberately indifferent". <u>Hunterson</u>, 308 F.3d at 246-47.

At issue here is Perry's contention that the extended FET is arbitrary and unsupported by law. Pursuant to the Parole Act of 1979, the Parole Board may establish a Future Eligibility Term outside the guidelines if the guidelines term "is clearly inappropriate in consideration of the circumstances of the crime, the characteristics and prior criminal record of the inmate and the inmate's institutional behavior." <u>Williams v. New Jersey State Parole Bd.</u>, 1992 WL 32329, *5 (D.N.J. Feb. 4, 1992) (citing N.J.S.A. § 30:4- 123.56(b); N.J.A.C. § 10A:71-3.21(d)). As mentioned in the above section of this Opinion, N.J.A.C. 10A:71-3.21(d) requires that the Parole Board consider specific enumerated factors in determining whether the presumptive FET term is inappropriate. These enumerated factors are found at N.J.A.C. 10A:71-3.11(b), which lists 23 separate factors to be considered by the Parole Board in determining parole eligibility.[3]  Section 10A:71-3.11(b) also permits consideration

---

[3] N.J.S.A. 30:4-123.53(a) provides that, "An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report ... or developed or produced at a hearing ... indicates by a preponderance of the evidence that the inmate has failed to cooperate in his or her own rehabilitation or that there is a reasonable expectation that the inmate will violate conditions of parole ... if released on parole at that time."  The rule set forth in N.J.A.C. 10A:71-3.11, listing the factors to be considered in making parole decisions, was adopted to implement this statutory standard . <u>In re Trantino Parole Application</u>, 89 N.J. 347, 366 (1982).

of "any other factors deemed relevant."  Perry alleges that the Parole Board improperly determined that Perry had not achieved his rehabilitative potential based principally on Perry's "lack of candor".  He also states that the Parole Board failed to conduct annual reviews as required by statute.[4]  It is clear from the record provided that the Parole Board considered substantially more than Perry's lack of candor in reaching its conclusion that there is a substantial likelihood of recidivism if Perry is released on parole.

Section 10A:71-3.11(b) specifically requires consideration of such factors as the commission of a crime while incarcerated; the commission of serious disciplinary infractions; the nature and pattern of previous convictions; adjustment to previous probation, parole and incarceration; the facts and circumstances of the offense, including aggravating factors surrounding the offense; a pattern of less serious disciplinary infractions; participation in institutional programs which could have led to the improvement of problems diagnosed at admission or during

---

[4]  Perry relies on N.J.S.A. 30:4-123.52(c) and N.J.A.C. 10A:71-3.6(d), which specifically mandate that the Parole Board shall annually monitor the progress of each adult inmate and provide the inmate with a written statement of any changes in his parole eligibility.  However, as demonstrated by respondents, Perry's claim is inaccurate.  Perry first became eligible for parole, but was denied, on October 27, 1997.  Thereafter, he received an annual review in December 1998, and again in May 2000.  Therefore, it does not appear that Perry has been denied any annual reviews to which he is entitled.

incarceration; mental and emotional health; and statements by the inmate reflecting on the likelihood that he or she will commit another crime.

Here, in its July 31, 2001 Notice of Reconsideration Decision, a three-member panel of the Parole Board discussed the relevant factors as set forth above and instituted a 15-year FET based on the following reasons:  Perry's extensive and serious criminal background and his failure to benefit from prior parole and probation, including the fact that he committed offenses while on parole, probation, and bail[5]; his extensive institutional disciplinary record, including 51 prison violations with 7 asterisk offenses, which indicate major behavioral problems and the likelihood of recidivism[6]; his failure to participate in institutional programs to address his admitted narcotics addiction[7]; his lack of candor regarding the commission of his crimes (his continued assertion that he was acting in self-defense in the murder of Officer Rybka, which is not

---

[5]  The Board panel noted that Perry's criminal record has become increasingly more serious over time.

[6]  The Board panel stated that Perry's lack of insight into his criminal background demonstrates maladaptive behavior, and that it serves to indicate little to no rehabilitative progress to reduce the substantial likelihood of Perry committing another crime if released on parole.

[7]  Perry did participate in one behavior modification program in 1985, but he never participated in drug counseling. While incarcerated, he admitted to drug use, which had not been detected by prison officials.

supported by the evidence, and his denial in shooting Detective Natarelli, for which a jury convicted him); his multi-crime convictions; prior opportunities on community supervision had failed to deter criminal behavior; prior incarcerations had failed to deter criminal behavior; and the fact that he committed the present offense while on bail status.  (Parole Board July 31, 2001 Decision, at Rudow Aff., Ex. K).

In affirming the denial of parole and extended FET, the Appellate Division observed that "Parole Board determinations are not to be reversed unless they are arbitrary or an abuse of discretion."  (App. Div. Opinion, April 30, 2002, at Rudow Aff., Ex. Q (citing <u>Trantino v. New Jersey State Parole Bd.</u>, 154 N.J. 25 (1998)).  The court found that the Parole Board had applied the correct standard and law in evaluating Perry's eligibility for parole and concluded that there was substantial credible factual evidence in the record to justify the Parole Board's decision that Perry had not reached his rehabilitative potential.  (<u>Id</u>.).  Accordingly, the Appellate Division affirmed substantially for the reasons set forth by the Parole Board.

This Court is in agreement with the Appellate Division that the decision of the Parole Board comports with state law and is supported by the record.  Certainly, this Court can discern no due process violation in the denial of parole, and the 15-year FET is not so long as to shock the conscience given Perry's

violent criminal history and numerous institutional violations and crimes, which strongly suggests that he is likely to recidivate if released on parole.  Further, Perry has failed to present evidence to rebut the factual determinations of the Appellate Division or to suggest that the Parole Board or Appellate Division applied an incorrect standard in determining his eligibility for parole.  He simply states that the Parole Board erroneously relied on his lack of candor to support their finding of likely recidivism.  This contention is patently unsupported by the record.  Thus, the Court concludes that the Parole Board's denial of parole and imposition of a 15-year FET is not egregious enough to "shock the conscience" or constitute arbitrariness in violation of Perry's rights.  See Hunterson, 308 F.3d at 247-48.  Perry is not entitled to federal habeas relief on this ground.

C.   The Victim Input Statement

Perry finally argues that he was denied due process in violation of his Fifth and Fourteenth Amendment rights.  He challenges, specifically, the Parole Board's allowance of the Commissioner of Corrections to provide a victim input statement at his parole hearing without notifying petitioner.

A victim injured as a result of a crime, or the nearest living relative of a murder/manslaughter victim, shall be entitled to present a statement for a parole report, or to

18

testify at a parole hearing, concerning the victim's harm. N.J.A.C. 10A:71-3.48(a). However, victim input statements or testimony are deemed confidential. N.J.A.C. 10A:71-2.1(a)10. Consequently, Perry was not entitled to receive notice of the victim input statement or its content.

In <u>Greenholtz</u>, the Supreme Court discussed in general what process is due in parole release proceedings:

> The function of legal process, as that concept is embodied in the Constitution, and in the realm of fact finding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.

442 U.S. at 13. The primary purpose of due process then is to minimize the risk of erroneous or arbitrary decisions. <u>Id</u>. In the context of parole release hearings, courts have generally found that inmates are entitled to notice, an opportunity to be heard, and a statement of reasons. <u>Id</u>. at 16.

The New Jersey Supreme Court held that to protect against "totally arbitrary action" in parole release hearings, "[o]nly a few, basic procedures are required." <u>Byrne</u>, 93 N.J. at 211. These required procedures include notice of the pendency of a parole determination, a statement by the government showing that the inmate is substantially likely to recidivate, and an opportunity for the inmate to submit a written response to the state's reasons. <u>Byrne</u>, <u>supra</u>; <u>Watson</u>, 933 F. Supp. at 393.

19

Pertinent here, the New Jersey Supreme Court held that confrontation issues are not implicated in the parole release process context. <u>Byrne</u>, <u>supra</u>. Moreover, there is no federal due process requirement that the prisoner must be provided notice of a victim's input statement. Accordingly, Perry has not demonstrated a federal constitutional deprivation that would warrant habeas relief on this ground, and this claim will be denied.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


                                        /s/ Jose L. Linares
                                        JOSE L. LINARES
                                        UNITED STATES DISTRICT JUDGE

Dated: October 25, 2005